**E-Filed** 7/28/06

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SUSAN E. WOODWARD, et al.,<br><br>            Plaintiff,<br><br>    v.<br><br>CONRAD P. SEGHERS, et al.,<br><br>            Defendants. | Case Number C 05-02965 JF<br><br>ORDER[1] TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION<br><br>[re: docket no. 46] |

On July 20, 2005, Plaintiff Susan E. Woodward ("Woodward") filed the instant complaint against Defendants Conrad P. Seghers ("Seghers"), Charles B. Manuel ("Manuel"), and Manuel & Jones, P.C. ("Manuel & Jones"), alleging four claims for relief: (1) Breach of Oral Contract, (2) Money on Open Book Account, (3) Complaint for Work, Labor, and Services at Agreed Price, and (4) Complaint for Reasonable Value of Work, Labor and Services. Seghers, proceeding *pro se*, moves to transfer the action to the Northern District of Texas, and alternatively for reconsideration of Magistrate Judge Lloyd's Order dated November 1, 2005 denying Seghers's motion to dismiss for lack of personal jurisdiction. Woodward opposes both

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

motions. The Court has considered the parties' briefing as well as the oral arguments presented on June 30, 2006. For the reasons set forth below, the Court will transfer the instant action to the Northern District of Texas. The motion for reconsideration will be denied.

## I. BACKGROUND

Woodward alleges the following: in 1998, Seghers, James R. Dickey ("Dickey"), and Samer M. El Bizri founded a hedge fund company, Integral Investment Management, L.P. ("Integral"). Through Integral, Seghers and Dickey offered and sold securities in three Texas-based hedge funds. The Art Institute of Chicago invested millions of dollars into these hedge funds. In 2001, the hedge funds lost as much as 90% of their initial investments. Following these losses, the Art Institute of Chicago filed suit against Seghers and Dickey in the Dallas County District Court for allegedly defrauding it of millions of dollars. At about the same time, the Securities and Exchange Commission ("SEC") began an investigation of Seghers and Dickey.

In 2002, Seghers's counsel, Lawrence J. Friedman ("Friedman") of Friedman and Feiger, hired Woodward as an expert in the areas of economics and securities matters. Woodward subsequently traveled to Dallas, Texas to consult with Seghers and Dickey and then returned to California where she reviewed various depositions and documents related to the SEC investigation. She was paid $15,000 to $20,000 for these services at a rate of $500 per hour.

On June 16, 2004, the SEC filed a complaint against Seghers and Dickey in the United States District Court for the Northern District of Texas. Seghers contacted Woodward in the fall of 2004 to retain her expertise in connection with a motion for summary judgment filed by the SEC. By this time, Seghers had retained Manuel as new counsel. Dickey retained Dwayne J. Hermes ("Hermes") of Hermes, Sargent & Bates LLP in Dallas, Texas. On January 6, 2005, after several conversations with Manuel, Woodward sent a retainer agreement to Manuel stating that her hourly rate was $600. Woodward thereafter began working on the case. Manuel and Seghers sent the necessary documents and deposition transcripts to California where Woodward resided. Woodward reviewed the relevant information and prepared an expert report dated

2

February 5, 2005. On February 7, 2005, she mailed an invoice for $42,900.00 to Manuel & Jones.[2]

On February 18, 2005, Woodward, Bruce Deal of Analysis Group, and Hermes met in Menlo Park, California to discuss the SEC suit. Manuel and Amy Benevidez of Hermes, Sargent & Bates LLP participated in the discussion via teleconferencing from Texas. Woodward alleges that during this conversation Manuel stated that she should consider her retainer agreement signed.

At the request of Manuel and Seghers, Woodward prepared a second expert report in early March. Woodward sent an invoice of $44,100.00 for the second report to Manuel & Jones. At about this time, Seghers informed Woodward that insurance funds were available to pay her. Woodward alleges that because the insurance company would pay only $425 per hour, Seghers requested that she bill more hours than she had in fact worked. Woodward refused to adjust her hours.

In early May 2005, Woodward again billed Manuel for the two expert reports. Seghers informed Woodward that on April 26, 2005, an injunction had been issued barring payment of the insurance proceeds to Seghers and Dickey. Woodward subsequently telephoned Manuel at least three times, but he did not return her calls. On June 2, 2005, Jennifer J. Snyder ("Snyder") from Reed Smith LLP sent Manuel a letter on behalf of Woodward demanding payment for her expert reports by June 13, 2005. On June 9, 2005, Manuel sent Snyder a letter stating that he refused to pay the $87,000. Woodward filed this action on June 20, 2005.

On May 1, 2006, Seghers filed a counterclaim against Woodward and her firm, Sand Hill Econometrics, Inc. ("Sand Hill") in this action. Seghers also filed a complaint against Woodward and Sand Hill in the Northern District of Texas demanding $25,029,000 in damages. Seghers's motion to consolidate that action with the current action is pending in the Northern District of Texas.

---

[2] The invoice accounted for 71.5 hours of Woodward's time.

3

## II. DISCUSSION

**A.   Motion to Transfer**

Seghers argues that the instant action should be transferred to the Northern District of Texas on the ground of convenience. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Venue in the instant action is proper in either the Northern District of California, where Woodward resides, or the Northern District of Texas, where Seghers resides. *See* 28 U.S.C. § 1391(a).  Transfer of venue under 28 U.S.C. § 1404(a) helps "avoid [] disruption, expense, and inconvenience [that] parties must suffer by having the trial in an improper forum." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 952 (9th Cir. 1968).

A motion for transfer pursuant to § 1404(a) lies within the discretion of the Court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The decision whether to grant such a motion turns on the facts of the particular case. *Id*.  The factors to be weighed in deciding a motion for transfer include:  (a) the location where the relevant agreements were negotiated and executed; (b) the state that is most familiar with the governing law; ©) the plaintiff's choice of forum; (d) the respective parties' contacts with the forum and the contacts relating to the plaintiff's cause of action in the chosen forum; (e) the differences in the costs of litigation in the two forums; (f) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (g) the ease of access to sources of proof; and (h) the relevant public policy of the forum state, if any. *Id*. at 498-99.  Ordinarily, a plaintiff's choice of forum is accorded substantial weight, and courts will not grant a motion under § 1404(a) unless the "convenience" and "justice" factors tip strongly in favor of transfer. *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).



Seghers argues that: (1) seventeen non-party witnesses are located in Dallas, (2) all

4

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

relevant conduct occurred in Dallas, (3) the underlying litigation for which Woodward was hired as an expert occurred in Dallas, (4) any work Woodward may have performed was done in connection with litigation in Dallas, and (5) Seghers does not have the financial resources to defend this litigation in California.

Woodward argues that: (1) she is a resident of California, (2) the original complaint was filed in the Northern District of California, and (3) she created the expert reports in California. At the hearing, Woodward's counsel presented additional arguments that the instant action should remain in California because this involves a simple matter of contract interpretation, and the witnesses named by Seghers are unnecessary to resolution of the suit.

After considering all of the relevant factors, this Court concludes that transfer to the Northern District of Texas is appropriate.

*1.  The Location Where the Relevant Agreements Were Negotiated and Executed*

Woodward initially flew to Dallas in 2002 to discuss the possibility that she would be hired as an expert in the SEC investigation. She apparently then did significant work for Seghers without a written contract. The business relationship that began in 2002 continued intermittently throughout the following years and always focused on the Texas SEC action. Woodward prepared the two expert reports for which she seeks payment in connection with the Texas action. Again, it appears that this work was done without a written contract. The parties agree that Woodward, Seghers and Manuel engaged in telephone conversations from their respective states, and that a meeting took place in preparation for the SEC lawsuit in which Dickey's counsel traveled to California while Seghers and his counsel participated from Texas via telecommunication. Accordingly, this factor does not weigh heavily for or against transfer.

*2.  The State That is Most Familiar With the Governing Law*

The legal issues involve relatively straightforward questions of contract and accounting law. Either Texas or California will be capable of determining and applying the appropriate law.

*3.  The Plaintiff's Choice of Forum*

"The general rule is that the plaintiff's choice of forum is afforded substantial weight."

5

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

*Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). "But, '[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint.'" *Id.* (quoting *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185 at *1 (N.D. Cal. 2001). Because Woodward resides in California, and performed at least some of the services at issue in California, this factor weighs heavily against transfer.[3]

4.  *The Respective Parties' Contacts With the Forum and The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum*

Woodward's services were focused on the Texas SEC action. While she prepared her expert reports in California, the purpose of those reports was to aid Seghers in the Texas litigation, and it was contemplated that she would testify at trial in the Texas action. Seghers asserts that he suffered significant damages because Woodward did not in fact testify in the SEC action (apparently she refused to testify because of the bill dispute). There is no allegation or indication that either Seghers or Manuel ever traveled to California. All parties agree that Woodward traveled to Texas on one occasion. This factor weighs heavily in favor of transfer.

5.  *The Differences in the Costs of Litigation in the Two Forums*

Seghers asserts that he cannot afford to travel to California to defend this litigation and cannot afford to hire counsel in California.[4] Seghers further argues that because Woodward already has retained counsel in Texas to represent her in the case he filed against her, it is more

---

[3] Woodward argues that the first-to-file rule also is applicable to the instant action. Under the first-to-file rule, when two cases involve the same or substantially similar parties and issues, and are filed in two different federal courts, the court that received the later filing has discretion to stay, transfer, or dismiss the second action, and the first action filed generally should proceed to judgment. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The first-to-file rule is applied at the discretion of the court. *Biosite, Inc. v. XOMA Ltd.*, 168 F. Supp. 2d 1161, 1164 (N.D. Cal. 2001). Technically, the first-to-file rule is inapplicable here because this is the district where the original complaint was filed. Nonetheless, the reasoning behind the first-to-file rule is given deference when the Court considers the plaintiff's choice of forum.

[4] Seghers submitted a declaration supporting these assertions.

economically feasible for her to litigate the action in Texas than for Seghers to litigate in California. Woodward argues that a change of venue will simply shift the burden of litigation from Seghers to her.

Seghers also asserts that seventeen non-party witnesses reside in the state of Texas. Seghers and Dickey are residents of Texas. The only resident of California who has been identified as a potential trial witness is Woodward. "The convenience of the witnesses is often the most important factor" when determining which forum would be the most convenient. *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002). This factor weighs in favor of transfer.

6.  *The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses*

The non-party witnesses are presumptively unavailable for trial in California, as they are outside the subpoena power of this Court. *See* Fed. R. Civ. Proc. 45(b)(2). Seghers indicates that these potential witnesses include three employees of Hermes, Sargent and Bates LLP, nine employees of Friedman and Feiger, four individuals who reside in Texas, and Manuel.[5] Reply pp. 14-17. Seghers argues that all of these individuals can attest to the exchanges that took place between the parties and whether a contract was formed. *Id.* Seghers further asserts that the witnesses are not under his control because they are not his employees and he has dismissed his counsel due to lack of finances. Woodward argues that these witnesses are irrelevant to the action, which she characterizes as a simple collection action. However, it appears that there are several factual issues regarding contract formation and performance that will implicate at least some of these witnesses. Accordingly, this factor weighs in favor of transfer.

7.  *The Ease of Access to Sources of Proof*

Seghers argues that because the events giving rise to the instant claim, the SEC suit and Seghers's interactions with the Art Institute of Chicago predominately took place in Texas, Texas is a better forum to access the evidence. Woodward asserts that she prepared all of the expert

---

[5] Manuel resides in Connecticut and Florida.

7

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

1  reports in California, that she received information regarding the reports in California, and that
2  she was in California when she discussed her expert services over the phone with Seghers and
3  Manuel. All of the interactions arising between the parties stem from the business relationship
4  that was formed in Texas in 2002 and continued until 2005. As noted above, it appears that
5  witnesses and documents in Texas – specifically documents relating to the underlying SEC
6  action– will be relevant to the instant action. Transfer of venue to Texas would make the
7  documents and witnesses more accessible. Accordingly, this factor weighs in favor of transfer.

8.  *Relevant Public Policy*

Woodward argues that Seghers has "unduly delayed in making a transfer motion," and that the transfer should not be granted in the interest of justice. Seghers contends that he did not delay in asking for a change of venue. Instead, he argues that he was preparing for a trial in February 2006 and has not been able to focus on this case until recently. Trial is a considerable time commitment. Seghers's delay in filing a motion to transfer is not unreasonable under the circumstances. Furthermore, only one case management conference has been conducted in this Court with respect to the instant matter.

Weighing all of the above factors, the Court concludes that transfer of venue is appropriate. Accordingly, the Court will grant the motion to transfer venue to the Northern District of Texas.

**B.    Motion for Reconsideration**

Seghers moves for reconsideration of Magistrate Judge Lloyd's Order denying his motion to dismiss for lack of personal jurisdiction. A United States Magistrate Judge may obtain jurisdiction either by referral from a district court judge or consent by the parties. *See* 28 U.S.C. § 636. On October 13, 2005, Seghers indicated that he consented to have Magistrate Judge Lloyd issue a dispositive ruling with respect to his motion to dismiss: "Defendant Conrad P. Seghers consents to submit the matter of personal jurisdiction to a United States Magistrate Judge." Order RE: Reassignment p. 2. Accordingly, when Magistrate Judge Lloyd denied Seghers's motion to dismiss on November 1, 2005, he had jurisdiction to do so.

8

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

It appears that Seghers, a *pro se* party, mistakenly believes that even though he consented to have Magistrate Judge Lloyd rule upon his motion to dismiss, he has recourse by means of a motion for reconsideration before a district judge. However, when a party has consented to proceed before a magistrate judge, as Seghers did, that party properly should file a motion for reconsideration with the magistrate judge who issued the order. Accordingly, it would have been appropriate for Seghers to file his motion for reconsideration with Magistrate Judge Lloyd. Instead, Seghers filed a motion for reconsideration by a United States District Court Judge.

The action ultimately was transferred to this Court because there appeared to be some ambiguity regarding Seghers's consent to proceed before Magistrate Judge Lloyd. Because Seghers is proceeding *pro se*, this Court will disregard the procedural defects of the motion for reconsideration and reach the merits of the motion. The motion is governed by Civ. L. R. 7-9, which requires that the party seeking leave to file a motion for reconsideration show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L. R. 7-9(b). Seghers's motion for reconsideration does not present an excusable failure to present material facts or law, does not indicate that there has been a material change in fact or law since Magistrate Judge Lloyd's order was issued, and does not suggest that Magistrate Judge Lloyd failed to consider material facts or arguments. Accordingly, this Court will deny Seghers's motion for reconsideration.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion to transfer is GRANTED and the motion for reconsideration is DENIED. The Clerk of the Court SHALL TRANSFER the action to the Northern District of Texas.

DATED: July 28, 2006

_____
JEREMY FOGEL
United States District Judge

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)

1 | This Order has been served upon the following persons:

2
3 | John L. Cooper     jcooper@fbm.com, brestivo@fbm.com, calendar@fbm.com

4 | Thomas B. Mayhew     tmayhew@fbm.com, ksmall@fbm.com, calendar@fbm.com

5
6 | Jenny A. Teaford     jteaford@fbm.com, pvoight@fbm.com, calendar@fbm.com

7
8 | Charles B Manuel, Jr
Suite 1000
9 | 230 Park Avenue
New York, NY 10169

10
11 | Manuel & Jones, P.C.
Suite 1000
12 | 230 Park Avenue
New York, NY 10169

13
14 | Charles Manuel, Jr , JR
Manuel & Jones PC
15 | Suite 2000
230 Park Avenue
16 | New York, NY 10169

17 | Conrad P Seghers
7010 Clear Springs Parkway
18 | Garland, TX 75044

19
20
21
22
23
24
25
26
27
28

Case No. C 05-02965 JF
ORDER TRANSFERRING ACTION TO THE NORTHERN DISTRICT OF TEXAS AND DENYING MOTION FOR RECONSIDERATION
(JFEX1)